# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

AMERICAN SOUTHERN
INSURANCE COMPANY,

    Plaintiff/Counter-Defendant,

v.                                                Case No. 8:20-cv-1409-WFJ-TGW

GULF COAST TRANSPORTATION,
INC., d/b/a UNITED CAB/TAMPA
BAY CAB,

    Defendant/Counter-Plaintiff.
_____/

## ORDER GRANTING SUMMARY JUDGMENT

This matter comes before the Court upon Plaintiff/Counter-Defendant American Southern Insurance Company's motion for summary judgment, Dkt. 29.[1] Plaintiff seeks summary judgment on both its complaint, Dkt. 1, and the counterclaim brought by Defendant Gulf Coast Transportation, Inc., Dkt. 9. Defendant filed a response in opposition to Plaintiff's motion, Dkt. 34. After carefully reviewing both parties' submissions and taking oral argument on the matter from counsel, the Court rules for Plaintiff.

## BACKGROUND

---

[1] Given Defendant Phillip Morgaman filed for bankruptcy, the automatic stay provision of section 362(a) of the United States Bankruptcy Code prevents Plaintiff from moving for summary judgment on its claim against him. Dkt. 19.

1

Plaintiff is an insurance company that provides liability coverage for, *inter alia,* taxicab companies. Dkt. 1-1 at 2. Defendant is a taxicab company operating about 175 taxis in the Tampa Bay area. Dkt. 34 at 2. Plaintiff wrote four auto liability policies covering Defendant's taxi fleet for four separate years. Dkt. 1-1; Dkt. 1-2; Dkt. 1-3; Dkt. 1-4. The four policies (hereinafter "the policy" or "the contract") are identical, aside from the year of applicability. The policy contains a deductible endorsement, which effectively states that there will be a per accident deductible of up to $25,000 for each paid claim. Dkt. 1-1 at 45. The policy also includes a loss adjustment expense due per accident of a much smaller percentage. Dkt. 1-1 at 45. Thus, every case that is settled under the contract would result in a per accident deductible of up to $25,000 plus a lesser administrative loss expense. *See* Dkt. 1-1 at 45. The policy makes these amounts due from and payable by the insured Defendant. Dkt. 1-1 at 45. A security deposit in the amount of $170,000 was provided by Defendant to secure for these expenses. Dkt. 31 ¶ 9; Dkt. 1-1 at 45.

Most important to this case, the policy does not contain any language permitting the defendant taxicab company to consent to, object to, or be consulted about settlements within policy limits. The policy includes the following language:

> We have the right and duty to defend any "insured" against a "suit" . . . . We may investigate and settle any claim or "suit" as we consider appropriate.

2

> Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

Dkt. 1-1 at 20.

During the course of coverage, Defendant stopped paying the deductible and expense amounts owed under the policy. As of June 30, 2021, $881,436.51 remained unpaid. Dkt. 31 ¶ 3. This amount was offset by Defendant's security deposit of $170,000, bringing the unpaid amount to $711,436.51. Dkt. 31 ¶ 12. Accordingly, Plaintiff filed this lawsuit to collect that amount under a breach of contract theory. Dkt. 1 at 4.

Within its answer, Defendant also brings a three-count counterclaim. Dkt. 9 at 8–13. Though Defendant cannot point to any settlement that was not within policy limits or identify any portion of the policy requiring consent to settle or settlement consultations, Defendant argues that Plaintiff improperly adjusted and settled cases.[2] In essence, Defendant contends that the unpaid amount was due but not owing because Plaintiff settled too many claims for too much money. As a result, Defendant claims that Plaintiff owes it damages. Specifically, Count I of the counterclaim asserts breach of contract, and Count II asserts breach of fiduciary

---

[2] In its counterclaim, Defendant alleges that Plaintiff did not settle claims for a fair and reasonable amount; failed to properly analyze and apportion liability when settling claims; paid on claims with no liability; failed to properly analyze damage, liability and exposure, thereby overpaying claims; failed to adhere to industry reserve and reporting and best practices, claims handling, and litigation management guidelines; failed to erect procedures to supervise adjusters properly; and overpaid claims to accelerate the closure of claims files. Dkt. 9 at 8, 10, 12.

duty on the same theory. Dkt. 9 at 8–11. Count III of counterclaim asserts breach of the implied covenant of good faith and fair dealing. Dkt. 9 at 11–13.

## LEGAL STANDARD

Summary judgment is appropriate if all pleadings, discovery, affidavits, and disclosure materials on file show that there is no genuine disputed issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). Rule 56(c) plainly mandates the entry of summary judgment against any moving party who, after adequate time for discovery, fails to prove the existence of an element essential to the movant's claim and that the movant would bear the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Summary judgment is inappropriate "[i]f a reasonable factfinder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact[.]" *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1315 (11th Cir. 2007). An issue of fact is considered material if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Relatedly, an issue of fact is deemed genuine if the record, when viewed as a whole, could lead a reasonable factfinder to return a verdict for the non-movant. *Id.*

In considering a motion for summary judgment, the record must be construed in the light most favorable to the non-movant. *Allen*, 495 F.3d at 1315.

All reasonable inferences are drawn in favor of the non-moving party, whose evidence must be believed. *Id.*; *see also Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018). However, the non-movant cannot simply rest upon bare assertions, conclusory allegations, surmises, or conjectures. *Celotex,* 477 U.S. at 322–23. When the moving party demonstrates an absence of evidence on a dispositive issue for which the non-movant bears the burden of proof at trial, the non-movant must "go beyond the pleadings and by [its] own affidavit, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324–25.

## DISCUSSION

Under Florida law, the interpretation of an insurance contract is a matter of law left to the court. *Gas Kwick, Inc. v. United Pac. Ins. Co.*, 58 F.3d 1536, 1538-39 (11th Cir. 1995). A court will construe an insurance policy in accordance with its plain meaning. *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005). "[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Id.* (quoting *Hagen v. Aetna Cas. & Sur. Co.*, 675 So. 2d 963, 965 (Fla. 5th DCA 1996)). In other words, an unambiguous insurance contract will be construed according to its plain terms, without reliance on extrinsic evidence. *See id.*

In this record, it is undisputed that Defendant breached the insurance policy by failing to pay the deductible and expenses due. The unrefuted affidavit of Plaintiff's principal, Dkt. 31, shows that Defendant owes the plaintiff insurer $711,436.51, an amount representing past-due deductibles and the administrative expense that Defendant agreed to pay under the insurance policy. While there are no appropriate defenses to this payment, the Court addresses Defendant's arguments.

The defendant taxicab company's first proffered defense is that Plaintiff improperly, unfairly, and unreasonably settled cases, paid on claims where liability was nonexistent or below the settlement value, and improperly handled claims on these matters. *See supra* note 2. In its affidavit, Plaintiff identifies each unreimbursed claim, when it was settled, and what is due thereunder. Dkt. 31-1. Of the several dozen settled claims upon which Plaintiff seeks to collect deductibles, Defendant discusses not one. Defendant also fails to describe how its generic litany of handling-error allegations applies or even occurred. Defendant does not allege that any specific claim was mishandled. In short, the record is barren of this defense, as no detail supports it. All this defense offers is a repeated boilerplate recitation within Defendant's counterclaim, response, and affidavit, none of which offer any supporting facts, details, or data. *See* Dkt. 9 at 8, 10, 12;

Dkt. 34 at 3−4; Dkt. 35 at 3.  In sum, Defendant has not stepped up to show a bona fide factual dispute to be adjudicated at trial, as required by *Celotex*.

Even if Defendant had set forth some disputed facts, the contract clearly permits the plaintiff insurance carrier to settle these claims within policy limits as it deems fit.  No right of settlement consultation or consent to settle is contained in the policy.  Nor does any term of the policy hint or allude to such a right.  In this regard, the Court has considered the teachings of *Shuster v. S. of Broward Hosp. Dist.*, 591 So. 2d 174 (Fla. 1992), a case in which the Florida Supreme Court determined that the precise bad faith claim brought by Defendant cannot stand.

In *Shuster*, the insured argued that his insurance carrier acted in bad faith by entering into settlements without fully investigating the claims and in amounts exceeding reasonable settlement values.  *Id.* at 176.  In determining whether the insured could maintain this action, the Florida Supreme Court noted that the parties' insurance contract explicitly gave the insurance carrier the right to settle claims as it "deem[ed] expedient."  *Id.*  Explaining that "expedient" is defined, in part, as "guided by self-interest," the court determined that this provision was clearly intended to allow the insurance carrier to be guided by its own self-interest when settling claims within policy limits.  *Id.* at 176−77.  The court further concluded that, given the insurance carrier was expressly granted the discretion to settle claims as it deemed expedient, the settling of a claim within policy limits for

less than its true value was not bad faith performance. *Id.* at 177. As such, the *Shuster* court found that the settlements at issue were expressly contemplated by the parties in their insurance contract, and the insured could not maintain his bad faith claim. *Id.*

The same logic holds true here. If Defendant wanted the right to consult, review, or consent to insurance settlements, it could have negotiated that in its contract. It did not. Rather, the express language of the insurance contract grants Plaintiff the authority to "investigate and settle any claim or 'suit' as [it] consider[s] appropriate." This "consider[s] appropriate" language is analogous to the "deems expedient" language seen in the *Shuster* contract. Other Florida courts have considered *Shuster* and noted that such a provision in an insurance contract permits an insurer to settle within policy limits, subject to very few exceptions. *See, e.g., Rogers v. Chicago Ins. Co.*, 964 So. 2d 280, 283 (Fla. 4th DCA 2007) (noting that exceptions to this rule may include an insurer's settling of a single party's claim in a case involving multiple parties and claims, as well as when an insured has been prevented from pursing a counterclaim); *Bland v. Cage*, 931 So. 2d 931, 933 (Fla. 4th DCA 2006) (finding this rule applies absent "special circumstances"); *Cohen v. Freeman*, 914 So. 2d 449, 450 (Fla. 4th DCA 2005) (citing *Shuster* for the proposition of there being no exception to this rule absent "unusual circumstances"). No such exceptions are present here.

Additionally, Defendant's principal filed an affidavit that counsel candidly conceded at the hearing contains somewhat of a "throwaway" argument. Dkt. 35 at 3. Defendant's principal stated that he understood the $170,000 not to be an initial security deposit for future deductibles owed, but a full corpus that should have covered all deductibles going forward. *See* Dkt. 35 at 3. Nothing in the insurance contract supports this understanding. To the contrary, Plaintiff's understanding of the $170,000 as only an initial security deposit for future deductibles owed by Defendant is the correct interpretation of this payment as it is described in both the insurance policy and Plaintiff's complaint.[3]

Turning from Defendant's answer to its claims, Defendant's counterclaim fails for several reasons. Regarding the Count I breach of contract claim, when pressed at the hearing, Defendant's lawyer was unable to point to any specific line or phrase in the insurance policy that Plaintiff breached. Instead, the taxicab company's entire basis for this claim, like its entire basis for its defense to Plaintiff's claim, is an implied duty to obtain consent to settle or engage in settlement consultations. This duty cannot be found in, and is contradicted by the express words of, the insurance contract.

---

[3] Equally frivolous is Defendant's argument (subsequently abandoned at the hearing) that the Department of Insurance Informational Memorandum OIR-20-04M (March 25, 2020) somehow has bearing on this suit. This memorandum was issued months after the last policy terminated and provides Defendant with no defense or cause of action.

Moreover, Defendant has neither sufficiently pled a material breach of contract, nor sufficiently rebutted the factual basis set forth by Plaintiff showing that no such material breach occurred.  To demonstrate a material breach sufficient to excuse payment, a complainant must prove that the breaching party "failed to perform a duty that goes to the essence of the contract and is of such significance that it relieves the injured party from further performance of its contractual duties." *Burlington & Rockenbach, P.A. v. Law Offices of E. Clay Parker,* 160 So. 3d 955, 960 (Fla. 5th DCA 2015).

As previously stated, Defendant has not pointed to a single specific settlement or claim that was improperly adjusted or resolved as a matter of fact. Defendant merely recites Plaintiff's supposed implied duty regarding settlements three times within its counterclaim and again in its principal's affidavit.  In short, no material breach of this contract is alleged that would support a claim for breach of contract or excuse Defendant's failure to pay as agreed under the policy.  Under the terms of this policy, settling taxicab liability lawsuits within policy limits does not establish such a significant breach that would relieve the insured party from paying as promised.

Concerning Defendant's Count II breach of fiduciary duty claim, the Court notes that neither party has cited a case where liability was imposed under Florida law for a breach of fiduciary duty based on an insurance company's settling of a

10

claim within policy limits. Plaintiff says no such case exists. The instant case would certainly not be the case to set such a precedent. Moreover, a breach of fiduciary duty claim cannot lie when the complained of conduct is expressly permitted by a written contract. *See Hallock v. Holiday Isle Resort & Marina, Inc.*, 4 So. 3d 17, 21 (Fla. 3d DCA 2009). Here, the policy permits Plaintiff alone to investigate and settle any claim it deems appropriate.

Finally, as to Defendant's Count III, a breach of the implied covenant of good faith and fair dealing cannot be invoked to override an express term of a written contract that was agreed to between the parties. *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1318 (M.D. Fla. 2000); *Ins. Concepts & Design, Inc. v. Healthplan Servs.*, 785 So. 2d 1232, 1234–35 (Fla. 4th DCA 2001). Nor can such an implied covenant add a new obligation that was not negotiated for, purchased, or present in the written contract. *See Ins. Concepts*, 785 So. 2d at 1235.

Ultimately, Defendant cannot identify a provision of the insurance contract that Plaintiff breached and is unable to show that Plaintiff breached a fiduciary duty or the implied duty of good faith and fair dealing. Beyond citing generic implied terms without specificity, the defendant taxicab company does not contest any individual amount owed to Plaintiff. In contrast, Plaintiff has specifically set forth these amounts and clearly demonstrated why they are due and owing. Therefore, it is uncontested on this record that Defendant Gulf Coast

11

Transportation, Inc., owes Plaintiff American Southern Insurance Company $711,436.51.

## CONCLUSION

Accordingly, the Court grants Plaintiff's summary judgment motion, Dkt. 29, as to both its complaint, Dkt. 1, against Defendant Gulf Coast Transportation, Inc., and the same defendant's counterclaim, Dkt. 9.  The Clerk will enter a judgment in Plaintiff's favor in the amount of $711,436.51, to bear interest from today's date, for which let execution issue.

**DONE AND ORDERED** at Tampa, Florida, on September 17, 2021.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO**:
Counsel of record